IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| PERRY ALAN PRICE, ) | Civil Action No. 3:11-95-CMC-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| MICHAEL J. ASTRUE, COMMISSIONER ) | |
| OF SOCIAL SECURITY ) | |
| ) | |
| Defendant. ) | |
| ) | |

      This case is before the Court pursuant to Local Civil Rules 73.02(B)(2)(a) and 83.VII.02, et seq., DSC, concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB").

### **ADMINISTRATIVE PROCEEDINGS**

      Plaintiff filed an application for DIB on February 23, 2007, alleging disability as of April 1, 2006. Plaintiff's claim was denied initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on October 1, 2009, at which Plaintiff appeared and testified. The ALJ issued a decision dated November 6, 2009, denying benefits and finding that Plaintiff was not disabled because under the medical-vocational guidelines (also known as the "Grids") promulgated by the Commissioner, Plaintiff remains able to perform work found in the national economy. See generally 20 C.F.R., Part 404, Subpart P, Appendix 2.

Plaintiff was forty-one years old at the time of the ALJ's decision. He has a high school education, and past relevant work as a firefighter. Plaintiff alleges disability since April 1, 2006, due to a heart attack and high blood pressure.

The ALJ found (Tr. 15-20):

1. The claimant meets the insured status requirements of the Social Security Act through December 20, 2011.

2. The claimant has not engaged in substantial gainful activity since April 1, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairment: status post heart attack (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b). Specifically, the claimant can lift and carry up to 20 pounds occasionally and 10 pounds frequently and stand, walk, and sit for 6 hours each in an 8-hour work day.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on April 2, 1968 and was 37 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills. (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

11. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

12. The claimant has not been under a disability, as defined in the Social Security Act, from April 1, 2006 through the date of this decision (20 CFR 404.1520(g)).

The Appeals Council denied the request for review in a decision issued November 8, 2010, making the ALJ's decision the final decision of the Commissioner. Plaintiff filed this action in the United States District Court on January 10, 2011.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971); Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, supra.

## MEDICAL EVIDENCE

Plaintiff underwent cardiac catheterization, left arteriography, and right stent placement in July 2005, after a suspected heart attack. A ninety-nine percent stenosis in the distal portion of Plaintiff's common right coronary artery was found. Stenting was successful. Tr. 188-195. In February 2006, he again presented with complaints of chest pain, and underwent cardiac catheterization on the left, angiography, and ventriculography on the left. Tr. 169-171. Dr. Mark

3

Lawton, a cardiologist, indicated in post-surgical notes that Plaintiff had only "minimal" atherosclerosis and "normal" left ventricular systolic function. Tr. 171.

Plaintiff complained of chest pain that was "partially relieved" with nitroglycerine in January 2007. He underwent left cardiac catheterization, angiography, left ventriculography, and right angiography surgery. Dr. Lawton opined Plaintiff had only "mild to moderate" single-vessel artery disease on the right, with normal systolic function. Tr. 155-166. X-rays of Plaintiff's chest taken at Coastal Carolina Medical Center in January 2007 were normal, and showed no evidence of acute cardiopulmonary disease. Tr. 425. In February 2007, a stress test revealed no evidence of inducible ischemia and "good exercise tolerance." Tr. 204.

In April 2007, state agency physician Dr. Jean Smolka reviewed Plaintiff's medical records and completed a "Physical Residual Functional Capacity Assessment" form. Dr. Smolka opined that Plaintiff retained the residual functional capacity ("RFC") to occasionally lift up to fifty pounds; frequently lift up to twenty-five pounds; stand and/or walk for about six hours per day; and unlimited ability to push and/or pull. Tr. 307-314.

Plaintiff underwent left heart catheterization, coronary angiography, left ventriculography, and right iliofemoral angiography in September 2007. Dr. Lawson concluded Plaintiff had only "mild" non-obstructive artery disease. Telemetry monitoring indicated a need for permanent pacing therapy, and a pacemaker was placed. Tr. 344-347, 348-350. An echocardiogram was largely normal, and showed only "mild" mitral insufficiency. Tr. 351.

In November 2007, Kenneth L. Snyder, D.O., examined Plaintiff and noted that Plaintiff was "doing well without any complaints," although he had "occasional" chest pain that was treated with nitroglycerin. Tr. 373-379.

4

In January 2008, state agency physician Dr. Jim Liao reviewed Plaintiff's medical records and reached similar conclusions to those reached by Dr. Smolka (that Plaintiff could perform medium work). Tr. 381-388. Plaintiff was treated at Coastal Carolina Medical Center for nonspecific chest pain on March 29, 2008. Dr. Jay Kalan, M.D., indicated that diagnostic studies were negative, and he recommended only a change in medication. Tr. 408. Chest x-rays revealed no acute cardiopulmonary disease, normal cardiac size, and no evidence of congestive heart failure. Tr. 414. Additional x-rays taken in July 2008 were also negative. Tr. 390.

In April 2008, Dr. Snyder opined that Plaintiff's heart disease was "mild," and Plaintiff's hypertension was "well controlled" with medication. He encouraged Plaintiff to continue with his "intensive" diet and exercise. Tr. 609-610. In July 2008, Dr. Lawson noted that Plaintiff was not always compliant with taking his prescribed medications, and concluded Plaintiff had only "mild" mitral insufficiency and no symptoms of angina. Tr. 599. In October 2008, Plaintiff was examined at the Coastal Carolina Medical Center for complaints of dizziness and nausea. He was treated with medication and released. Tr. 487-493.

In March 2009, Plaintiff was treated at Coastal Carolina Medical Center for complaints of chest pain. Tr. 499-536. Chest x-rays were normal (Tr. 581), he was treated with medication, and he was discharged the same day with instructions to follow-up with his primary physician. Tr. 502. In July 2009, Plaintiff was examined by Dr. Ravina Balchandani, a cardiologist, for complaints of chest pain. Dr. Balchandani noted that diagnostic tests were negative and opined that Plaintiff's discomfort may have been gastric related. She recommended that Plaintiff exercise and that he observe diet restrictions. Tr. 683-685.

In July and August 2009, Plaintiff was treated at Coastal Carolina Medical Center for complaints of lower back pain. These records indicate that Plaintiff sought treatment after injuring his back moving a boat, performing yard work, and riding an attraction at a local fair. Tr. 690, 711. Plaintiff was diagnosed with muscle stain and medications were prescribed. Tr. 687, 702.[1]

After the ALJ's decision, Plaintiff submitted to the Appeals Council a "Multiple Impairment Questionnaire" completed by Dr. G. Perez on June 2, 2010, at the request of Plaintiff's counsel. Tr. 713-720. Dr. Perez indicated that Plaintiff's primary symptom was "back pain" (Tr. 715), and he rated that pain as being moderate in severity (Tr. 716). Dr. Perez also indicated that Plaintiff had moderate fatigue, but opined that Plaintiff's pain had been "completely relieve[d]" with medication that had no unacceptable side effects. Tr. 716. Based on Plaintiff's back pain, Dr. Perez opined that Plaintiff could sit for four hours per day; stand/walk for four hours per day; needed to get up and move around every hour; should not stand/walk continuously; could occasionally lift up to ten pounds; and had no limitations in performing repetitive motions. Tr. 717-718. Dr. Perez also indicated that "the earliest date that the description of symptoms and limitations . . . applie[d]" was June 2, 2010." Tr. 718.

---

[1]The Commissioner, in his brief, appears to believe that these records were submitted to the Appeals Council (rather than the ALJ). Review of the record, however, reveals that these records were before the ALJ and were properly considered by the ALJ. The ALJ specifically noted and considered the records contained in Ex. 22F (Tr. 686-712), in determining that Plaintiff's back impairment was not severe. It was noted that Plaintiff sought very little medical treatment for back pain and treatment notes from August 2009 reflected that Plaintiff ambulated effectively, he exhibited full range of motion of his extremities, he had no swelling or deformities, and he denied musculoskeletal numbness or tingling. Tr. 15-16. The only record submitted to the Appeals Council appear to be a questionnaire from Dr. G. Perez (see Tr. 4 - indicating records submitted to Appeals Council are contained in Ex. 23F - Tr. 713-720), discussed below.

**HEARING TESTIMONY**

Plaintiff testified he was a high school graduate, had completed more than one year of college, and was working toward a degree at the time of the hearing. Tr. 24-25. He said he had not worked since April 2006, and he was receiving disability retirement from the state based on his past work as a fire fighter. Plaintiff testified he suffered a heart attack in July 2005, but had kept working at light duty until his retirement was approved. Tr. 26. Additionally, Plaintiff acknowledged he had done volunteer work approximately three days a week as an assistant principal at a local school, performing administrative tasks such as assisting with payroll and writing emails to parents. He performed these tasks for a about a two year period (from approximately 2005 or 2006 to September 2007) that extended into the time he alleged disability. Tr. 28-29, 41. He said his wife had gotten him to perform more house work and yard work, and he visited his family almost every day. Tr. 34.

Plaintiff testified that in addition to his heart problems, he had headaches for which he took prescription medication that made him sick and drowsy. Tr. 35. He said he could walk no more than one-quarter of a mile, stand for approximately one hour, and lift up to thirty pounds. Tr. 36-38. Plaintiff also complained of back problems. Tr. 37.

**DISCUSSION**

Plaintiff alleges that: (1) the Appeals Council failed to follow the treating physician's rule in evaluating new evidence; (2) the ALJ erred in evaluating Plaintiff's complaints and credibility; and (3) the ALJ erred in failing to obtain testimony from a vocational expert ("VE"). The

7

Commissioner contends that substantial evidence[2] supports the Commissioner's final decision that Plaintiff was not disabled within the meaning of the Social Security Act.

    A.    <u>Credibility</u>

Plaintiff alleges that the ALJ erred in evaluating his credibility. Specifically, he argues that the ALJ failed to properly consider his complaints of a racing heartbeat, lightheadedness, chest pains, dizziness, and headaches as of the date of the hearing. He also argues that he testified of medication side effects from Nitroglycerin including a severe headache, and side effects of Vicodin (which he took for the headaches) including nausea and drowsiness. Plaintiff argues that nothing in the record suggests that his assertion of his level of pain and difficulty functioning was anything but credible. The Commissioner contends that the ALJ reasonably found that Plaintiff's subjective complaints were not fully credible.

In assessing credibility and complaints of pain, the ALJ must: (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d 585, 591-92 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain

---

[2]Substantial evidence is:
> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

      The ALJ's decision to discount Plaintiff's credibility is supported by substantial evidence and correct under controlling law. In his decision, the ALJ found that Plaintiff was not fully credible based on the medical and non-medical evidence. Specifically, the ALJ noted that while Plaintiff received treatment for coronary artery disease since his alleged onset date, his symptoms were not as severe and limiting as Plaintiff alleged. Tr. 17. Objective medical testing supports the ALJ's decision. See Tr. 18, 166, 171, 204, 344-347, 348-340, 351, 599, 609-610. Additionally, as noted by the ALJ, Plaintiff sought no treatment of any kind for his heart condition from November 2007 through March 2008. See Tr. 18. The ALJ's decision is also supported by Plaintiff's activities of daily living. Despite his heart problems, Plaintiff was able to perform light duty work from July 2005 (the time of his heart attack) until April 2006. From either 2005 or 2006 until September 2007, Plaintiff performed volunteer work as an assistant school principal three days a week. Plaintiff also testified that he is able to perform household chores such as laundry and washing dishes, and typically visits with his family on a daily basis. In 2009, Plaintiff reported he was performing yard work when he injured his back.

B.      Medical-Vocational Guidelines/VE

Plaintiff argues that the ALJ erred in relying on the Grids and not obtaining VE testimony where he testified that he suffers from nonexertional impairments including regular chest pains, dizziness, lightheadedness, headaches, nausea, and drowsiness. The Commissioner contends that the ALJ reasonably relied on the Grids as the ALJ found that Plaintiff retained the RFC to perform a full range of light work, and reasonably concluded that Plaintiff's subjective complaints of nonexertional impairments and significant limitations were not fully credible.

When a claimant: (1) suffers from a nonexertional impairment that restricts his ability to perform work of which he is exertionally capable, or (2) suffers an exertional impairment which restricts him from performing the full range of activity covered by a work category, the ALJ may not rely on the grids and must produce specific vocational evidence showing that the national economy offers employment opportunities to the claimant. See Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989); Hammond v. Heckler, 765 F.2d 424, 425-26 (4th Cir. 1985); Cook v. Chater, 901 F. Supp. 971 (D.Md. 1995). A nonexertional impairment is an impairment which is present whether the claimant is attempting to perform the physical requirements of the job or not. See Gory v. Schweiker, 712 F.2d 929 (4th Cir. 1983); see also 20 C.F.R. § 404.1569a. Every nonexertional condition does not, however, rise to the level of a nonexertional impairment. The proper inquiry is whether there is substantial evidence to support the finding that the nonexertional condition affects an individual's residual capacity to perform work of which he is exertionally capable. Walker, 889 F.2d at 49; Smith v. Schweiker, 719 F.2d 723, 725 (4th Cir. 1984).

The ALJ's decision to rely on the Grids to find Plaintiff not disabled is supported by substantial evidence. The ALJ specifically found that Plaintiff had the RFC to perform the full range

10

of light work. As discussed above, the ALJ's determination that Plaintiff's complaints of nonexertional impairments and significant limitations were not fully credible is supported by substantial evidence. The record before the ALJ contains no evidence that Plaintiff's treating physicians placed significant limitations on his activities. See, e.g., Melton v. Apfel, 181 F.3d 939, 941 (8th Cir. 1999)(claimant's testimony undermined by the lack of significant restrictions place on his activities by his physicians). The ALJ afforded Plaintiff the opportunity to submit an RFC assessment from Dr. Lawson (see Tr. 54-55), but Plaintiff failed to do so. The ALJ reasonably noted the lack of objective evidence to support Plaintiff's claims of significant nonexertional limitations and extreme functional limitations. Tr. 17-18.

As the ALJ found that Plaintiff's alleged nonexertional impairments did not significantly limit his ability to perform basic work activities and that Plaintiff retained the RFC to perform the full range of light work, the ALJ reasonably relied on the Grids to determine that Plaintiff was not disabled. See, e.g., Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985)(a nonexertional limitation may cause the Grids to be inapplicable only where the limitation is severe enough to prevent a wide range of gainful employment at a particular level); Russell v. Sullivan, 950 F.2d 542, 545-546 (8th Cir. 1991)(where ALJ rejected claimant's subjective testimony that pain prevents him from engaging in the full range of sedentary work, the ALJ properly used the Grids to determine that the claimant was not disabled); Hutsell v. Sullivan, 892 F.2d 747, 750 (8th Cir. 1989)(when a claimant's subjective complaints of pain are explicitly discredited by the ALJ, the Commissioner's fifth step may be met by the use of the Grids).

### D. Appeals Council/Treating Physician's Opinion

Plaintiff alleges that the Appeals Council erred in failing to follow the treating physician rule. He argues that Multiple Impairment Questionnaire completed by his treating family physician (Dr. Perez) indicates that he is incapable of performing even sedentary work on a sustained basis based on Dr. Perez's findings. These findings include that Plaintiff suffers from a moderate level of pain and/or fatigue; his pain, fatigue, and other symptoms are severe enough to periodically interfere with his ability to pay attention and concentrate; he could only sit for four hours in an eight-hour day; he could only stand/walk for four hours each in an eight hour day; and he could only occasionally lift ten pounds. Plaintiff argues that there does not exist persuasive contradictory evidence to rebut Dr. Perez's opinion such that Dr. Perez's opinion is entitled to great weight. The Commissioner contends that Dr. Perez's opinion does not provide a reasonable basis for overturning the ALJ's decision.

The Appeals Council must consider evidence submitted with the request for review in deciding whether to grant review "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Wilkins v. Secretary, Dep't of Health and Human Servs., 953 F.2d 93, 95-96 (4th Cir. 1991). Evidence is new if it is not duplicative or cumulative. Williams v. Sullivan, 905 F.2d 214, 216 (8th Cir. 1990). Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome. See Borders v. Heckler, 777 F.2d 954, 956 (4th Cir. 1985).

The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) and

12

416.927(d)(2); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro v. Apfel, 270 F.3d at 178 (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1992)).

Under § 404.1527, if the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors to determine the weight to be afforded the physician's opinion: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 404.1527. SSR 96-2p provides that an ALJ must give specific reasons for the weight given to a treating physician's medical opinion. SSR 96-2p.

The Appeals Council's decision to not grant review based on this new evidence is supported by substantial evidence and correct under controlling law. Plaintiff fails to show that the new evidence from Dr. Perez relates to the relevant period and/or is material.

There is no indication that Dr. Perez's June 2010 opinion relates to the period on or before the ALJ's decision (November 6, 2009). Dr. Perez opined that Plaintiff suffered from the outlined functional limitations only as of June 2, 2010 (Tr. 720), the date he completed the form in question, which was almost seven months after the ALJ's decision. Even if Plaintiff was able to show that this opinion relates to the period on or before the ALJ's decision, he fails to show that this report is

material. A medical report issued after the ALJ's decision is treated as less persuasive than an opinion issued prior to the ALJ's decision. See, e.g., Wagner v. Apfel, 201 F.3d 439, 1999 WL 1037573, at *3 (4th Cir. Nov. 16, 1999)(medical reports created after the issuance of an ALJ's decision are less persuasive than opinions issued prior the ALJ's decision). Additionally, there is no indication that Dr. Perez's restrictions were retroactive or permanent, such that they do not provide a basis for changing the ALJ's decision that Plaintiff was not disabled. See, e.g., Szubak v. Secretary, 745 F.2d 831, 834 (3d Cir. 1984)("An implicit materiality requirement is that the new evidence relates to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition."); Milano v. Bowen, 809 F.2d 763, 766 (11th Cir. 1984).

Further, Dr. Perez's form does not provide a reasonable basis for overturning the administrative decision denying disability benefits. Plaintiff has not shown that this opinion is entitled to controlling weight. The form is not supported by any treatment notes from Dr. Perez. Dr. Perez's conclusions appear to be based on a possibility that Plaintiff may have Type-2 diabetes and high cholesterol, as well as Plaintiff's own subjective complaints of back pain. Tr. 715. Dr. Perez assessed Plaintiff's pain as being only moderate, and indicated that medication completely relieved Plaintiff's pain without any unacceptable side effects. Tr. 716. "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." Gross v. Heckler, 785 F.2d 1163, 1165-6 (4th Cir. 1986).

## **CONCLUSION**

Despite Plaintiff's claims, he fails to show that the Commissioner's decision was not based on substantial evidence. This Court may not reverse a decision simply because a plaintiff has

produced some evidence which might contradict the Commissioner's decision or because, if the decision was considered de novo, a different result might be reached.

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence, Richardson v. Perales, supra. Even where a plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision, Blalock v. Richardson, supra. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. Shively v. Heckler, supra. It is, therefore,

RECOMMENDED that the Commissioner's decision be **affirmed**.

Joseph R. McCrorey
United States Magistrate Judge

December 6, 2011
Columbia, South Carolina